IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

UNITED STATES OF AMERICA,                    Case No. 3:10-cv-97-MA

                Plaintiff,                        OPINION AND ORDER

        v.

$11,500.00 in UNITED STATES
CURRENCY, et al.,

                Defendants.


Dwight C. Holton
United States Attorney
District of Oregon
Robert D. Nesler
Assistant United States Attorney
1000 S.W. Third Ave., Suite 600
Portland, OR 97204-2902

        Attorneys for the United States of America

F. de la Puente
1610 12th Street SE
Salem, Oregon, 97302

        Attorney for Claimant Charles Guerrero


MARSH, Judge



1 - OPINION AND ORDER

The United States brings this civil forfeiture proceeding pursuant to 21 U.S.C. § 881; and 28 U.S.C. §§ 1345, 1356 & 1395. Currently before the court are the government's motion to strike the claim of Charles Guerrero and, in the alternative, for partial summary judgment concerning defendant $11,500 (#45); Claimant Charles Guerrero's cross-motion for partial summary judgment (#51); the government's motion to strike the declaration of Rosalie Guerrero & related portions of claimant's concise statement of facts (#54); and the parties' cross motions for summary judgment on the issue of forfeitability (#59 & #66).

## BACKGROUND

Claimant Charles Guerrero and Rosalie Guerrero were married in 1993. Charles Guerrero Depo. at 13. On May 30, 2005, Rosalie Guerrero was involved in an automobile accident. Declaration of Attorney Keri Trask at ¶ 1. On an undisclosed date, Progessive Insurance Company paid Rosalie Guerrero PIP benefits for lost wages caused by the accident in the amount of $11,096.05. Additionally, on February 22, 2007, Rosalie Guerrero was paid $12,743.75 in bodily injury benefits. Id. at ¶ 2.

Over two years later, on June 30, 2009, Rosalie Guerrero was arrested for possession with intent to distribute heroin. Affidavit of Special Agent Guy Gino in Support of Complaint *in Rem* for Forfeiture at ¶ 12. On July 1, 2009, a Deputy Multnomah County Sheriff contacted the Oregon High Intensity Drug Trafficking Area

2 - OPINION AND ORDER

Interdiction Taskforce to report that Virgil Wood was attempting to post $11,500 in cash to bail out Rosalie Guerrero.  Id. at ¶ 11. When questioned about the currency, Wood provided inconsistent answers as to its source.  Id. at ¶ 13.  A narcotics detection canine sniff of the currency was positive for the odor of narcotics.  Id. at ¶ 14 & Declaration of Guy Gino (#67) at ¶ 4 & Exh. 2.

Wood subsequently consented to a search of his vehicle.  Gino Aff. at ¶¶ 16 & 21.  As the officers and Wood walked toward Wood's vehicle, they encountered Claimant Charles Guerrero.  Id. at ¶ 17. Although Wood initially indicated he did not know Guerrero, Charles Guerrero informed the officers that he had come to town with Wood and had given him the money to post bail for his wife.  Id. at ¶ 18.  Claimant Guerrero indicated that he did not post the bail himself because he had no valid identification aside from an Oregon Department of Corrections (ODOC) inmate release card.  Id.  The officers searched Guerrero and found $2,971.00 in his pant pockets and several pills (later determined to be Clonazepam and Methadone).  Id. at ¶ 19 & Gino Dec. (#67), Exh. 3 at 1.  Guerrero was transported to the Portland Police Bureau's Drugs and Vice Division.  Gino Aff. at ¶ 20.[1]

_____

[1] Claimant subsequently was charged with possession of heroin, state money laundering, and a parole violation.  He pled guilty to unlawful possession and received a sentence of 12 months bench probation.  On December 15, 2009, he was arrested

Officers subsequently discovered 3.6 grams of Heroin in the trunk of Wood's car in a black bag, which also contained mail bearing Rosalie Guerrero's name and Tootsie Pop suckers identical to those found on Charles Guerrero. Id. at ¶ 22. Wood claimed he did not know who owned the bag. Id. Wood later told officers that he was helping Charles Guerrero bail out his wife, and that Guerrero had given him the bail money. Id. at ¶ 25. Wood stated that Guerrero was homeless and unemployed, but seemed to have money. Id. at ¶¶ 26 & 27.

When Claimant Guerrero was deposed by the government on July 21, 2010, he testified that (1) neither he nor Rosalie Guerrero were currently employed; (2) he had not "held down a steady job" in the fifteen years prior to the seizure; (3) Rosalie had been convicted of delivery of a controlled substance and theft by receiving; (4) he has sold drugs for more than 25 years; and (5) he was selling drugs during the period of February to July, 2009, and his only other source of income during that time was sporadic yard work and proceeds from the sale of some furniture and tools. Guerrero Depo. at 35, 37, 57-58, 63, 71-72 & 75; see also Gino Dec. (#67) at ¶¶ 6 & 7 & Exhs. 4 & 5 (setting forth Rosalie and Charles Guerrero's criminal history).

---

again for unlawful possession and delivery of heroin. Gino Aff.
In Support of Complaint at ¶¶ 29, 32-34; Gino Dec., Exh. 4 at 1.

With regard to the seized currency, Claimant Guerrero testified that he had $12,000 hidden under the carpet in the room where he was staying, and that he possessed an additional $3,000.00. Guerrero Depo. at 23. Claimant testified that the $2,971.00, seized from his pockets, was money he had been saving from the sale of some furniture and tools. Id. at 37 & 75. With regard to the $11,500 seized from Virgil Wood, claimant testified that (1) weeks prior to her arrest, Rosalie Guerrero gave him the $12,000; (2) the currency previously had been in the trunk of her car and consisted of $100 dollar bills; (3) Rosalie told him that the source of the funds was an insurance settlement; (4) he did not know how the money got into $100 dollar increments; (5) Rosalie gave him the currency for "safekeeping"; and (6) he gave the currency to Virgil Wood to bail Rosalie out of jail. Id. at 24, 28-30, 34, 43-44 & 86-88. Rosalie Guerrero also was deposed by counsel for the government. However, she invoked her Fifth Amendment right not to answer any questions.

On February 2, 2010, this court issued a warrant for the arrest and seizure of the $11,500.00 and $2,971.00. On February 23, 2010, Charles Guerrero, with the assistance of counsel, filed the sole claim as to the defendant currency.

///

///

///

5 - OPINION AND ORDER

## DISCUSSION

### I.   **Standing to Challenge Forfeiture of $11,500.**

Pursuant to Rule G(5)(a)(i), of the Supplemental Rules for Certain Admiralty or Maritime Claims and Asset Forfeiture Actions, any person claiming an interest in property, including a bailee, may contest its forfeiture by filing a claim in the court where the forfeiture action is pending.  The government, in turn, may move to strike the claim for lack of standing at any time before trial. Rule G(8)(c)(i)(B).  The motion "may be presented as a motion for judgment on the pleadings or as a motion to determine after a hearing or by summary judgment whether the claimant can carry the burden of establishing standing by a preponderance of the evidence."  Rule G(8)(c)(ii)(B).

A forfeiture claimant must have both statutory and Article III standing.  See United States v. One 1985 Cadillac Seville, 866 F.2d 1142, 1148 (9th Cir. 1989).  In the instant proceeding, the government moves to strike Claimant Guerrero's claim to the $11,500, and for partial summary judgment, on the basis that he lacks both Article III and statutory standing.  Claimant has filed a cross-motion for partial summary judgment, contending that there is no genuine issue of fact as to his ownership or possessory interest in *both* currencies.

///

///

6 - OPINION AND ORDER

A.    **Article III Standing.**

Article III standing is a threshold matter in every federal case.    United States v. Real Property Located at 5208 Los Franciscos Way, Los Angeles, Cal., 385 F.3d 1187, 1191 (9th Cir. 2004).    A claimant who asserts a possessory interest in forfeited property, and provides some explanation for his possession, has Article III standing to contest its forfeiture.    Id.; United States v. $100,348.00 in U.S. Currency, 354 F.3d 1110, 1119 (9th Cir. 2004); United States v. $191,910.00 in U.S. Currency, 16 F.3d 1051, 1058 (9th Cir. 1994); United States v. $122,043.00 in U.S. Currency, 792 F.2d 1470, 1473 (9th Cir. 1986).    The asserted interest need not be an ownership interest, but rather can be any type of interest, including a possessory interest.    $191,910.00 in U.S. Currency, 16 F.3d at 1057.    This court looks to state law to determine the existence and extent of a claimant's property interest.    Real Property Located at 5208 Los Franciscos Way, 385 F.3d at 1191; $100,348.00 in U.S. Currency, 354 F.3d at 1119.

I agree with the government that Claimant Guerrero does not have an ownership interest in the $11,500 simply by virtue of the fact that Rosalie Guerrero allegedly received the insurance settlement while married to claimant.    Under Oregon law, spouses may hold property individually during the course of a marriage. See Kowalski v. Kowalski, 227 Or. 45, 58-59, 361 P.2d 64 (1961); O.R.S. 108.060.    The fact that Oregon law also provides that, *upon*

7 - OPINION AND ORDER

*dissolution of the marriage*, such property is a marital asset subject to a rebuttable presumption that both spouses contributed equally to its acquisition, and treats the assets as "a species of co-ownership" (see O.R.S. 107.105(f)), does not create an ownership interest by operation of law during the course of the marriage. See <u>United States v. Real Property Located at 148 Maunalanikai Place in Honolulu, Hawaii</u>, 2008 WL 3166799, *7 (D.Haw. 2008) (collecting cases which hold that a right to equitable distribution of marital property in a divorce does not confer an ownership interest independent of the divorce proceeding). Accordingly, assuming that the source of the seized $11,500 was an insurance settlement paid to Rosalie Guerrero, claimant lacks an ownership interest in the funds under Oregon law.[2] Hence, I turn to his contention that he held the funds as a bailee for Rosalie Guerrero.

Under Oregon law, a bailment is the delivery of personal property by one person to another, to be held according to the purpose or object of the delivery, and to be returned when that purpose is accomplished. <u>Gage v. All Nations Ins. Co.</u>, 314 Or. 700, 705-6, 842 P.2d 784 (1992); <u>Dundas v. Lincoln County</u>, 48 Or. App. 1025, 1031-32, 618 P.2d 978 (1980). In order for a bailment

---

[2] I also reject claimant's assertion that he affirmatively testified in his deposition that he was the owner of the $12,000. On the contrary, claimant unequivocally testified that it was Rosalie's money from an insurance settlement, and that Rosalie transferred possession of the $12,000 to him for safekeeping. See Charles Guerrero's Depo. at 34 & 87-90

to exist, the bailee must have both possession and physical control of the property. Dundas, 48 Or. App. at 1032. Possession is defined to include the intent to exercise control over the goods. Jackson v. Miller, 41 Or. App. 669, 672, 598 P.2d 1255 (1979).

In the instant proceeding, there is a genuine dispute of material fact as to whether claimant was a bailee of the $11,500.00. Although Claimant Guerrero did not have actual possession of the funds when they were seized, there is evidence to support the conclusion that the funds remained in his constructive possession given the fact that he turned the funds over to Virgil Wood for the limited purpose of using the funds to bail out Rosalie Guerrero, and claimant exercised control over the funds by accompanying Wood to the jail in order to ensure that the funds were used as he directed. See United States v. $38,000.00 Dollars in U.S. Currency, 816 F.2d 1538, 1544 (11th Cir. 1987) (addressing constructive possession by bailee); see also State v. Keelan, 103 Or. 172, 182-83, 203 P. 306 (1922) (noting that possession of property may be actual or constructive).

Accordingly, the government's motion to strike and, in the alternative, for summary judgment (#45), and claimant's cross motion for summary judgment (#51), as to the issue of Article III standing to challenge the forfeiture of $11,500, are denied. Because the government does not challenge, or move to strike, Claimant Guerrero's claim as to the $2,971.00, claimant's cross-

motion for summary judgment on the issue of standing to contest the forfeiture of the *$2,971.00* is granted.

**B.    <u>Statutory Standing</u>.**

Statutory standing requires that a claimant comply with the procedural requirement of 18 U.S.C. § 983(a)(4)(A) and the Supplemental Rules for Certain Admiralty and Maritime Claims. <u>United States v. Real Property Located at 1 Mile Up Hennessey Road, Burnt Ranch, Cal.</u>, 2010 WL 456922, *2 (E.D.Cal. 2010); <u>United States v. $133,420.00 in U.S. Currency</u>, 2010 WL 2594304, *4 (D.Ariz. 2010). Pursuant to Supplemental Rule G(5)(a)(i)(B) & G(5)(a)(iii), a person asserting an interest in property subject to forfeiture must file a claim which states the claimant's interest in the property and, if the person is asserting an interest as a bailee, identifies the bailor. Courts typically require strict compliance with the forfeiture filing requirements to perfect standing. <u>See</u> <u>United States v. Real Property</u>, 135 F.3d 1312, 1316-17 (9th Cir. 1998); <u>United States v. $487,825 in U.S. Currency</u>, 484 F.3d 662, 665 (3rd Cir. 2007); <u>see also</u> <u>United States v. $22,226.25 in Interbank FX Account No. XXX0172</u>, 763 F.Supp.2d 944, 948 (E.D.Tenn. Jan. 31, 2011) (noting that in some circumstances, especially where claimant is proceeding *pro se*, court may excuse minor procedural failings so long as underlying goals of forfeiture rules are not frustrated); <u>United States v. 2003 Volkswagen Passat</u>

<u>Washington License Plate 709 YUV</u>, 2011 WL 1576223 (E.D.Wash. Apr. 26, 2011) (same).

The government argues that Claimant Guerrero lacks statutory standing because he asserted a possessory interest, and not an ownership interest, in his claim for the $11,500.  <u>See</u> Claim (#5).[3] However, because I have concluded that Claimant Guerrero does *not* have an ownership interest in the $11,500, but rather that there is an issue of fact as to whether he was a bailee of the currency, the fact that he asserted only a possessory interest in the currency does not render his claim legally deficient.

The government additionally moves to strike Claimant Guerrero's claim on the basis that he failed to comply with the requirement of Rule G(5)(a)(iii), that a "person asserting an interest as a bailee . . . identify the bailor."  That motion is well taken.  As noted above, Claimant Guerrero's claim asserted a "possessory" interest, which was erroneously explained in his administrative claim as "ownership."  Claimant Guerrero never pled the existence of a bailment, and did not identify Rosalie Guerrero as the bailor.

───────────────

[3] In his claim filed with the assistance of counsel in this court on February 23, 2010, petitioner states his interest in the currency is "possessory".  Claim (#5) at 1.  In the attached administrative claim, also filed with the assistance of counsel on or about November 3, 2009, petitioner states his interest is "possessory, i.e., the money belongs to me."  <u>Id.</u> at 6.

Moreover, at no time has claimant sought to amend his claim to identify Rosalie Guerrero as the bailor, nor has he proffered any explanation for failing to identify the bailor in his claim. Indeed, the issue of bailment was not raised until after claimant filed two motions to dismiss and was deposed by the government.  In his deposition, taken in July, 2010, claimant explained for the first time that the $11,500 was given to him by his wife for safe keeping several weeks before her arrest.  It was not until February 8, 2011, after the close of discovery, that counsel raised the bailment issue in any briefing to the court.  <u>See</u> Claimant's Memorandum in Support of Cross-Motion for Summary Judgment (#50).

For all of these reasons, the government's motion to strike Claimant Guerrero's claim as to the $11,500 is granted, and claimant's cross motion for partial summary judgment (#51) on the issue of statutory standing to challenge the forfeiture of the $11,500 is denied.  In the alternative, and as set forth in Section III, *infra*, I conclude that the government's second motion summary judgment should be granted on the basis that there is no genuine dispute of material fact as to whether the $11,500 is subject to forfeiture.

**II.  <u>Government's Motion to Strike Declaration</u>.**

In opposition to the government's motions, claimant submitted the June 28, 2010, declaration of Rosalie Guerrero which provides as follows:

        I, Rosalie Guerrero, hereby declare under penalty of perjury that the following is based on my personal knowledge and I am competent to testify to the matters stated herein.

1.  I am married to Charles Guerrero, the claimant in the civil forfeiture action herein.

2.  In May 2005, I was involved in an auto accident which caused me bodily injury on account of which I required surgery on my neck.  I received PIP benefits for wage loss for one year in the sum of $11,096.05.  In February 2007, I received an additional benefit in the sum of $12,743.75 as compensation for the injury.  I saved and invested the money and realized a profit.

3.  The source of the money which Charles Guerrero is claiming in the above-captioned case is proceeds from the insurance benefits described in paragraph 2, above, not from any exchange for a controlled substance or listed chemical in violation of law.

4.  The above statement is true to the best of my knowledge and belief, and I understand it is made for use as evidence in court and is subject to penalty of perjury.

Claimant's Concise Statement of Facts (#52) at 11.

The government moves to strike Rosalie Guerrero's declaration on the basis that she invoked her Fifth Amendment right against self incrimination and refused to answer questions at her deposition.  Specifically, she refused to corroborate claimant's assertions related to the source of the seized currency and the nature of his interests therein.  Claimant opposes the motion on the basis that, by addressing the deficiencies of Rosalie Guerrero's declaration in its briefing, the government thereby waived any objection to its admission.

Claimant's waiver argument is unsupported and unconvincing. Accordingly, I exercise my discretion in favor of granting the government's motion to strike the declaration and the related portions of claimant's concise statement of facts. See In re Edmond, 934 F.2d 1304, 1308-09 (4th Cir. 1991) (striking party's affidavit on summary judgment because he refused to submit to deposition on Fifth Amendment grounds); United States v. Parcels of Land, 903 F.2d 36, 43 (1st Cir. 1990) (concluding district court had ample authority to strike affidavit in opposition to summary judgment after claimant invoked Fifth Amendment at deposition); United States v. $148,840 in U.S. Currency, 521 F.3d 1268, 1277 (10th Cir. 2008)(noting district court has discretion to strike claim based upon a claimant's assertion of Fifth Amendment right against self incrimination).

III. **Cross Motions for Summary Judgment on Issue of Forfeitability**.

    A.    **Timeliness of Notice**.

Claimant moves for summary judgment on the basis that the government's written notice of forfeiture was untimely under 18 U.S.C. § 983(a)(1)(A)(i), because it was not served within 60 days of the forfeiture. Claimant argues that the currency was seized on July 1, 2009, and he did not receive actual notice of the seizure until October 22, 2009, despite the fact that the government knew his whereabout by virtue of his incarceration from July 1, 2009

until July 26, 2009.  Claimant concludes that the proper remedy for the untimely notice is to return the property to him.

In response, the government contends that this was an "adoptive forfeiture" governed by the 90-day notice requirement of § 983(a)(1)(A)(iv).  Additionally, the government argues that it provided notice reasonably calculated to apprise interested parties of the forfeiture by publishing notice of the forfeiture, and by sending the notice of seizure on July 29, 2009, to claimant's last known criminal defense attorney.

I agree with claimant that ICE Senior Special Agent Guy Gino, in cooperation with the Portland Police Bureau, seized the funds.[4] Accordingly, this is not an adoptive forfeiture, and the government was "required to send written notice to interested parties . . . in a manner to achieve proper notice as soon as practicable, and in no case more than 60 days after the date of seizure."  18 U.S.C. § 983(a)(1)(A)(i) (addressing non-judicial forfeiture notice requirements).

It is uncontested that the government failed to provide actual notice to Claimant Guerrero within 60 days.  Despite this deficiency, I conclude that because the government timely initiated a judicial forfeiture proceeding, return of the property at this

---

[4] See Complaint (#1), Exh. A, Affidavit of Special Agent Gino at ¶ 15 & Exh. 6 to Declaration of Special Agent Gino (#67).

stage is not warranted.  As explained in <u>Return of Seized Property</u>

<u>v. United States</u>:

> Though the remedy for failing to provide timely
> notice is the return of the property seized, the statute
> also permits the Government to commence a judicial
> forfeiture proceeding at a later time.  That time has
> come, as the Government filed its civil forfeiture action
> . . . .  Filing a complaint for civil forfeiture allows
> the Government to seize the property subject to
> forfeiture.  Release of the seized [property] to
> Claimants would therefore be academic.  The Government's
> properly-filed civil forfeiture action would allow it to
> immediately re-seize the property.
>
> Section 983(a)(1)(F) does not clearly state whether
> the Government may commence a forfeiture proceeding after
> having failed to provide timely notice without first
> returning the property seized.  *The prevailing view among*
> *several district courts is that inadequate notice does*
> *not prohibit the Government from bringing a forfeiture*
> *proceeding at any time, regardless of whether the*
> *property has been returned.*

625 F.Supp.2d 949, 954 (C.D.Cal. 2009)(emphasis added, citations

omitted)[5]; <u>see also</u> <u>United States v. $448,163.10 in U.S. Currency</u>,

2007 WL 4178508, *3  (D.Conn. 2007) (collecting cases).

Moreover, claimant has made no showing that his ability to

defend against the seizure was prejudiced, or that he was otherwise

denied due process as a result of the delay in his receipt of

--------

[5] It is worthy of note that the Ninth Circuit denied the
claimants' subsequent petition for writ of mandamus in <u>Return of</u>
<u>Seized Property v. United States</u>, noting that it has never
decided the question of whether the government must return seized
property, before initiating a judicial forfeiture proceeding, due
to lack of timely notice under § 983(a)(1)(A).  The Ninth Circuit
opined that the district judge's determination that the
government need not return the property was not clear error.  <u>In</u>
<u>re Jordan</u>, 606 F.3d 1135, 1137 (9th Cir. 2010).

actual notice of the seizure for forfeiture.  Cf. United States v. $874,938.00 U.S. Currency, 999 F.2d 1323, 1325 (9th Cir. 1993) (setting forth factors to determine whether delay in filing forfeiture proceeding violates due process).  For all of these reasons, claimant's motion for summary judgment on this issue is denied.

    **B.**    **Forfeitability of Currency.**

    "In a suit or action brought under any civil forfeiture statute for the forfeiture of any property the burden of proof is on the Government to establish, by a preponderance of the evidence, that the property is subject to forfeiture."  18 U.S.C. § 983(c)(1).  "[I]f the government's theory of forfeiture is that the property was used to commit or facilitate the commission of a criminal offense, or was involved in the commission of a criminal offense, the Government shall establish that there was a substantial connection between the property and the offense."  18 U.S.C. § 983(c)(3).  Summary judgment is appropriate if, when viewing the evidence in the light most favorable to the non-moving party, there is no genuine dispute of material fact as to whether the currency represents proceeds traceable to an exchange for controlled substances or was used or intended to be used to facilitate such a transaction.  Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); 21 U.S.C. § 881(a)(6).

Claimant moves for summary judgment on the basis that the government cannot establish a substantial connection between the seized currency and any drug offenses. Claimant argues that the undisputed evidence is that the currency consisted of proceeds of an insurance settlement paid to Rosalie Guerrero in 2007, and money earned from sporadic yard work and the sale of furniture and/or tools by claimant.

The government opposes claimant's motion, and moves for summary judgment in its favor, on the basis that there is compelling evidence in the record to refute claimant's contention that the funds came from legitimate sources--evidence which undeniably establishes the substantial connection between the seized currency and illegal drug activity. I agree with the government's position as to the $11,500 only.

1.  **Seizure of $11,500**.

The totality of the circumstances giving rise to the seizure of the $11,500 from Virgil Wood are undisputed. As outlined above, claimant testified that the $11,500 had been hidden under the carpet in his room, Rosalie had given him the money several weeks prior to going to jail, and the money previously had been stored in the trunk of Rosalie's car, in a nylon bag, in $100 increments. Guerrero Depo. at 23-24, 28-29, 34, & 43-45. Claimant testified that Rosalie told him that the source of the money was an insurance settlement. Id. at 28-29 & 34.

18 - OPINION AND ORDER

Because Rosalie Guerrero invoked her Fifth Amendment right against self incrimination, her declaration regarding the source of the $11,500 has been stricken.   Claimant's deposition testimony concerning what Rosalie told him regarding the source of the funds is hearsay, and is not based upon claimant's personal knowledge. In the absence of some *admissible* evidence supporting the contention that the source of the $11,500 was the insurance settlement paid to Rosalie Guerrero two years prior to the seizure, and given the wealth of circumstantial evidence linking the currency to Rosalie and Charles Guerrero's lengthy and extensive drug activity, I conclude that there is no genuine issue of fact as to whether the $11,500 constitutes proceeds of illegal drug activity or was used to facilitate such activity. See <u>Norse v. City of Santa Cruz</u>, 629 F.3d 966, 973 (9th Cir. 2010), <u>petition for cert. filed</u> (June 6, 2011) (proponent of summary judgment must set out facts that it will be able to prove through *admissible* evidence); <u>F.T.C. v. Publishing Clearing House, Inc.</u>, 104 F.3d 1168, 1171 (9th Cir. 1997) ("conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact").

In so holding, I find significant that the money was in $100.00 dollar bills; it was stored by Rosalie Guerrero in the trunk of a car and then hidden by claimant under a carpet; was the subject of a positive dog alert for the presence of the odor of

narcotics;[6] Rosalie Guerrero asserted her Fifth Amendment right against self incrimination when questioned about the currency; and the currency was found in the possession of Virgil Wood whose vehicle contained a black bag containing Heroin and pieces of mail addressed to Rosalie.  Additionally, there is no evidence in the record that either claimant or Rosalie Guerrero had any legitimate source of income for many years prior to the seizure.  Given the totality of the circumstances, I conclude that Rosalie Guerrero's receipt of an insurance settlement *more than two years* prior to the seizure in question does not give rise to a genuine dispute of material fact as to whether the seized currency represented a portion of that settlement or profits therefrom.

I reject claimant's assertion that the government must link the funds to a specific drug transaction and/or that circumstantial evidence cannot support a forfeiture.  See <u>United States v. Funds in the Amount of Thirty Thousand Six Hundred Seventy Dollars</u>, 403 F.3d 448, 467-70 (7th Cir. 2005) (concluding that dog alert and totality of circumstances demonstrated that cash seized from airline passenger was connected to drug trafficking); <u>United States</u>

---

[6] Special Agent Gino witnessed the dog sniff which was conducted by Officer Scott C. Groshong, Nrcotics Dog Handler, Drugs and Vice Division, Portland Police Bureau.  Special Agent Gino attests that Officer Groshong informed him that the canine alerted to the odor of narcotics.  Gino Aff. at ¶ 14; Gino Dec. at ¶ 4.  Claimant's unsupported conjecture that the canine did not alert to the smell of narcotics (<u>see</u> Claimant's Reply (#71) at 10) does not create an issue of fact.

20 - OPINION AND ORDER

<u>v. $242,484.00</u>, 389 F.3d 1149, 1160-67 (11th Cir. 2004) (applying totality of circumstances to determine that cash carried by airline passenger was the proceeds of, or traceable to, an illegal drug transaction).

    2.    <u>**Seizure of $2,971.00.**</u>

In contrast to the foregoing, there is very little evidence in the record concerning the source of the $2,971.00 seized directly from claimant.  The money was not the subject of a positive drug detection dog alert, was not in $100 dollar bill increments, and has not been linked to Rosalie Guerrero or the Heroin found in Virgil Wood's vehicle.  At his deposition, claimant testified that the money was obtained from sporadic landscaping work and selling some furniture and unspecified tools.  Guerrero Depo. at 37 & 75.

The government argues that "[t]here is no evidence in the record of a legitimate source for these funds." Plaintiff's Memo. (#68) at 18 n.3.  Admittedly, the source of the funds is highly suspect given claimant's lack of employment and his admitted drug activity.  However, based upon this scant record, I conclude that summary judgment is not proper as to either party.

<u>**CONCLUSION**</u>

Based on the foregoing, the government's motion to strike and, in the alternative, for summary judgment as to defendant $11,500 (#45), and the government's motion to strike the declaration of Rosalie Guerrero (#54) are GRANTED.  The government's cross motion

for summary judgment (#66) is GRANTED as to defendant $11,500 and DENIED as to defendant $2,971.  IT IS FURTHER ORDERED that Claimant Guerrero's cross motion for summary judgment (#51) is GRANTED as to his standing to contest the forfeiture of defendant $2,971.00 and is DENIED in all other respects.  Claimant Guerrero's second motion for summary judgment (#59) is DENIED.

        IT IS SO ORDERED.

        DATED this _13_ day of July, 2011.

                                        __/s/ Malcolm F. Marsh_____
                                        Malcolm F. Marsh
                                        United States District Judge